David L. KITCHEN, Plaintiff,

v.

THE BURLINGTON NORTHERN
AND SANTA FE RAILWAY
COMPANY, Defendant.

No. 02–2491–GTV.

United States District Court,
D. Kansas.

Jan. 12, 2004.

Bobbie R. Bailey, Howard, Rome, Martin & Riddley, LLP, Redwood City, CA, James E. Kunce, Overland Park, KS, for Plaintiff.

David M. Pryor, Jack D. Rowe, Lathrop & Gage, LC, Kansas City, MO, Sara J. Kagay, Lathrop & Gage, LC, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff David L. Kitchen brings this employment discrimination suit against his former employer, Defendant The Burlington Northern and Santa Fe Railway Company. Plaintiff alleges that Defendant unlawfully discriminated against him because of his age and because he complained of age discrimination. He also alleges that when Defendant terminated Plaintiff's employment, Defendant breached an implied contract to terminate only for cause.

The case is before the court on Defendant's motion for summary judgment (Doc. 45). For the following reasons, the court grants Defendant's motion in part. The court reserves ruling on whether Plaintiff's state law breach of contract claim should be dismissed.

## I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to the non-moving party's case. Immaterial facts and facts not properly supported by the record are omitted. References to testimony are from depositions.

Plaintiff was born January 25, 1950. In 1971, he began his employment with The Atchison, Topeka and Santa Fe Railway Company as a track laborer. Between 1971 and 1984, Plaintiff was promoted to various positions, including machine operator, student foreman, track foreman, relief track supervisor, and track supervisor. In April 1984, he was promoted to Assistant Roadmaster, an exempt position. In 1986, he was promoted to Roadmaster, and in 1994 to Assistant Director of Maintenance. As Assistant Director of Maintenance, Plaintiff was responsible for the supervision of several Roadmasters, safety, disci-

pline of employees, the division budget, and the maintenance of the tracks under his responsibility.

In late 1995, The Atchison, Topeka and Santa Fe Railway Company merged with The Burlington Northern Railroad, forming The Burlington Northern and Santa Fe Railway Company ("BNSF"). After the merger, Plaintiff's position was first retitled General Roadmaster, and then Division Engineer, but his job duties did not change. Plaintiff eventually became Division Engineer over the "Kansas Division," an area of main line railroad tracks in Missouri and Kansas. Another Division Engineer, Dennis Dudding, was responsible for the "Kansas City Division." In August 2000, Rick Russell, General Director of Maintenance and Plaintiff's direct supervisor at the time, ordered Plaintiff and Dudding to switch territories. The switch did not affect Plaintiff's title, pay, or benefits. Mr. Russell testified in deposition that no executive was displeased with Plaintiff's performance.

### February 2001 Demotion

On February 22, 2001, Russell informed Plaintiff that BNSF planned to combine the Kansas and Kansas City Divisions, retaining only one Division Engineer over both divisions. Russell testified that the change was effective February 16, 2001, but that he had to run the decision by his bosses before notifying Plaintiff of the change. Russell, who was born on October 26, 1951, also told Plaintiff that he was going to retain Dudding as Division Engineer over both divisions, and that Plaintiff would be Dudding's Assistant Division Engineer. Dudding was born on November 13, 1955. When Plaintiff asked the reason for the change, Russell told him that "it was just a decision that they had made" and that Plaintiff "had done nothing wrong." In deposition, Russell later testi-

fied that "the leadership part of—Dudding, or his—the leadership abilities over [Plaintiff] and this wasn't anything personal, I just felt like this was the best move for the division at the time." Russell also testified that Plaintiff and Dudding were "about even" in technical skills, but that Dudding had superior leadership skills.

Dudding started working with The Burlington Northern Railroad in 1974. He became an exempt employee in 1988 as an Assistant Roadmaster. He later became a Roadmaster and an Assistant Division Engineer. Dudding became a Division Engineer in 1999.

BNSF assigns salaried employees to "salary bands," which have a broad salary range. It is possible for an employee in a lower salary band to receive a base salary higher than an employee in a higher salary band. As a Division Engineer, Plaintiff's salary band was grade 32, but the salary band of an Assistant Division Engineer was 31. When Plaintiff became an Assistant Division Engineer, his salary was to be "red circled" for a period of eighteen months, meaning he would remain at salary band 32 until August 2002, at which time he would transfer to salary band 31. Plaintiff's stock options would also be "red circled" for eighteen months at band 32. After the "red circle" period, Plaintiff's salary would remain the same, but his stock options would be reduced.

On February 28, 2001, Plaintiff met with Russell and told him that he did not think the Assistant Division Engineer assignment was fair because of his age, length of service, experience, and veteran status. He also told Russell that he planned to speak with an attorney about the reassignment, and Russell responded, "Well, that's your privilege." During the meeting, Russell also told Plaintiff that he would help him get a Division Engineer job elsewhere within BNSF. At Plaintiff's request, Rus-

sell sent Plaintiff a letter on March 13, 2001, explaining the job changes and that the reassignment was effective February 16, 2001.

Plaintiff also told the Human Resource Director, Dan Freshour, that he did not think the reassignment was fair, given his age and experience. Freshour told Plaintiff he would investigate. Plaintiff testified that he thought Freshour understood that he was lodging a complaint, although he did not follow BNSF's Internal Complaint Procedure. A few weeks later, Freshour told Plaintiff there was nothing he could do about the reassignment.

Despite Russell's offer to help Plaintiff obtain another Division Engineer position, Plaintiff did not apply for the "couple" of jobs he believed were posted because he "didn't feel that it would do any good" and because he believed it was "obvious" that BNSF did not want him as a Division Engineer. Two Division Engineer positions in California and Texas were posted after Plaintiff's termination, and Plaintiff could have applied for them, even as a separated employee.

### Plaintiff's Performance v. Dudding's Performance

BNSF's performance reviews are structured to give employees ratings from 5 to 1; 5—outstanding; 4—excellent; 3—satisfactory; 2—unsatisfactory; and 1—too new to rate. In 1998, Plaintiff received an overall competency rating of 3.5 and a leadership rating of 3.0. Dudding received an overall competency rating of 4.1 and a leadership rating of 5. In 1999, Plaintiff received an overall competency rating of 3.0 and a leadership rating of 3.0. Dudding received an overall competency rating of 3.75 and a leadership rating of 4.0. In 2000, Plaintiff received a 3.0 in both categories, and Dudding received a 3.75 in both categories. Both Plaintiff and Dud-

ding have the same written comments for "leadership" in 2000, when Russell completed both of their performance evaluations. Although the evaluations contain the same written comments, Russell gave Dudding an overall higher score based on "probably ... how well he developed the people that he worked with and from my observations and while I'm out in the field with them, is one of the factors and numerous others." Russell had no recollection of what documentation would support different ratings for the two Division Engineers.

In Plaintiff's 1999 performance evaluation, Plaintiff's supervisor, Steve Weatherby, recommended that Plaintiff undergo a "360 evaluation," which is an opportunity to give Plaintiff a "verbal mirror" regarding his leadership skills. Weatherby also noted that he "would like to see an improvement in ownership of problems and leadership to build a cohesive team." Plaintiff's performance evaluation came after Michael Nuorala, also Plaintiff's supervisor and the Director of Line Maintenance, wrote Plaintiff a memo setting forth deficiencies he had observed, including Plaintiff's training of employees, communication, and other leadership skills.

The performance reviews are largely subjective reviews. On the portion of the review capable of being supported by objective data, the "Scorecard," Plaintiff scored a 4.0 and Dudding a 3.75 for the year 2000. The Scorecard rated engineering audit items such as incidents, lost days, derailments, number of reportable developments, and budget issues, as well as others.

Plaintiff was rated first out of twenty-one divisions on safety frequency/severity ratio in the Kansas Division in 1999 and 2000. Mr. Russell believed that company-wide, safety is one of the most critical things they manage. Plaintiff also re-

peatedly completed projects under budget while Dudding exceeded his budget.

### November 2001 Termination

In October 2001, BNSF began restructuring the company. Approximately four hundred positions were eliminated, including all Assistant Division Engineer positions. Plaintiff testified in deposition that he believes he was assigned to the Assistant Division Engineer position in February because BNSF knew it planned to eliminate the position in October.

On October 26, 2001, Russell called Plaintiff while he was on vacation and told him that his position was being eliminated. The decision to eliminate the position was initiated "a lot higher" than Russell. Russell offered Plaintiff three different positions and told him to decide which one he would like to accept. BNSF offered Plaintiff the position of Maintenance Planner in Lincoln, Nebraska, or either of two Roadmaster positions in Fort Scott, Kansas, or Chillicothe, Illinois. The Maintenance Planner position was a salary band 30, and the Roadmaster positions were salary band 29. BNSF later told Plaintiff that it would allow him to work either the Lincoln or Fort Scott position out of Kansas City.

Plaintiff refused to choose one of the offered positions. Plaintiff was concerned about how reassignment might affect his retirement benefits, and told Nuorala and Freshour about his concerns. He also told Nuorala that he did not think it was fair because of his age and experience, and he told Freshour that he did not think it was fair and that he was consulting with an attorney. Freshour then told Dudding that Plaintiff was seeking legal counsel. Plaintiff never made a formal complaint through BNSF's internal complaint procedure, and never called BNSF's hotline, which accesses BNSF's Chief Executive Officer.

On Monday, November 5, 2001, Dudding told Plaintiff that BNSF needed a decision regarding which position he would choose by the end of the day. Freshour later gave Plaintiff until Friday, November 9, 2001 to get answers to his retirement questions and decide which position to accept. Plaintiff told Freshour on November 9 that his attorney had advised him not to make any decision.

Dudding and Nuorala, in consultation with Freshour, made the decision to terminate Plaintiff, and BNSF terminated his employment on November 12, 2001. Carl Ice, Vice President of Operations, approved the termination.

The afore-mentioned facts are not comprehensive. Additional facts may appear in this opinion as necessary.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a

lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

### III. DISCUSSION

■ Plaintiff brings two of his claims under the Age Discrimination in Employment Act ("ADEA"). Plaintiff claims that he was discriminated against because of his age and retaliated against because he complained of age discrimination. The ADEA prohibits an employer from discriminating against an employee who is forty years or older on the basis of the employee's age. 29 U.S.C. § 623(a)(1), 631(a). A plaintiff bringing suit under the ADEA can prove age discrimination by either direct or circumstantial evidence. *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir.2000) (citations omitted).

■ When a plaintiff lacks direct evidence of age discrimination, as in the instant case, his claim is analyzed under the three-step, burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Stone*, 210 F.3d at 1137 (citation omitted). Under the *McDonnell Douglas* analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff presents a prima facie case, then the burden shifts to the defendant to offer evidence suggesting a legitimate, non-discriminatory reason for the adverse employment action taken against the plaintiff. *Id.* Once the defendant articulates a legitimate, non-discriminatory reason, the ultimate burden reverts to the plaintiff to demonstrate an issue of material fact as to whether the proffered reason is pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted). Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or … that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### A. ADEA Discrimination Claim

Plaintiff claims that Defendant discriminated against him because of his age by demoting him to the position of Assistant Division Engineer in February 2001.[1] De-

---

1. Defendant originally characterized Plaintiff's discrimination claim as being based on three distinct events: (1) the change of territories in August 2000; (2) Plaintiff's demo-

fendant argues that Plaintiff has failed to establish a prima facie case because Dudding is insignificantly younger than Plaintiff. The court agrees.

■ Under *McDonnell Douglas,* a plaintiff must ordinarily establish the following to satisfy his prima facie case burden: (1) he was within the protected age group; (2) he was doing satisfactory work; (3) he was subjected to an adverse employment action; and (4) the employer intended to discriminate against him on the basis of age. *Spraggs v. Sun Oil Co.,* No. 97–5194, 2000 WL 628186, at *4 (10th Cir. May 16, 2000) (citations omitted). In *O'Connor v. Consolidated Coin Caterers Corp.,* the Supreme Court noted that the inference of unlawful discrimination necessary to establish a prima facie case "cannot be drawn from the replacement of one worker with another worker insignificantly younger." 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *see also Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160, 1166 (10th Cir.2000) (finding that a plaintiff who was replaced by someone only two years his junior failed to establish a prima facie case since the difference in ages was minimal).

Plaintiff is almost six years older than Dudding. Both men were over age forty at the time Plaintiff was demoted and Dudding "replaced" Plaintiff, or was given the position Plaintiff thought he should have. The Tenth Circuit has not addressed whether six years is "insignificantly younger" under *O'Connor,* but under the circumstances of this case, the court determines that it is.

The court's research reveals that other courts have considered similar age differences and have reached varied conclusions. The Eleventh Circuit has held that a three-year age difference was sufficient to establish a prima facie case. *Carter v. DecisionOne Corp.,* 122 F.3d 997, 1003 (11th Cir.1997); *see also Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1359–60 (11th Cir.1999) (holding five-year age difference sufficient). Other federal appellate courts have held that an age difference of less than five years is insufficient to establish a prima facie case. *See Williams v. Raytheon Co.,* 220 F.3d 16, 20 (1st Cir.2000) (citing *Hoffman v. PRIMEDIA Special Interest Publ'ns,* 217 F.3d 522, 524–25 (7th Cir.2000); *Bush v. Dictaphone Corp.,* 161 F.3d 363, 368 (6th Cir. 1998); *Schlitz v. Burlington N.R.R.,* 115 F.3d 1407, 1413 (8th Cir.1997)). The Seventh Circuit has held that under *O'Connor,* six and seven-year age gaps are "presumptively insubstantial" and insufficient to satisfy the prima facie burden, but that a ten-year gap is "presumptively substantial." *Hartley v. Wis. Bell, Inc.,* 124 F.3d 887, 893 (7th Cir.1997); *see also Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 619 (7th Cir.2000) ("There being only seven years difference between the two, [the favored employee] is not substantially younger."). Judge Lungstrum of this court has held that a four-and-a-half year difference is "obviously insignificant" and insufficient to satisfy the prima facie burden when the relevant ages were forty-nine and forty-five. *Housley v. Boeing Co.,* 177 F.Supp.2d 1209, 1215 (D.Kan.2001). Judge Murguia has held that a seven-year differ-

---

tion; and (3) Plaintiff's termination. In Plaintiff's response brief, Plaintiff represented that he is not making a separate claim for the August 2000 change in territories. He argues, however, that the court should consider the circumstances surrounding the territory change. Plaintiff also conceded that Defen-

dant is entitled to summary judgment with respect to Plaintiff's discrimination claim for his termination. The court therefore addresses only Plaintiff's claim regarding his demotion, but also considers the facts surrounding the August 2000 change in territories.

ence was sufficient to establish a prima facie case. *Robinette v. Nat'l Credit Servs. Corp.*, 182 F.Supp.2d 1055, 1058 (D.Kan.2001). In *Robinette*, the plaintiff was forty-three and her replacement was thirty-six. *Id.* at 1057. Magistrate Judge Waxse has held that where a plaintiff was forty-six and her replacement was under the age of forty, the plaintiff established a prima facie case. *Conrad v. Bd. of Johnson County Comm'rs*, 237 F.Supp.2d 1204, 1253 (D.Kan.2002).

■ Here, Plaintiff was fifty-one and Dudding was forty-five at the time of the alleged discriminatory act. The court determines that Dudding was "insignificantly younger" than Plaintiff and that Plaintiff cannot establish a prima facie case of discrimination. However, even in the event that Plaintiff were able to establish a prima facie case, the court would still conclude that summary judgment is appropriate with respect to this claim.

Defendant has met its burden of presenting a legitimate, non-discriminatory reason for its decision to demote Plaintiff. Defendant has asserted that by combining the Divisions and retaining only one Division Engineer, it anticipated increasing efficiency. It also cited Dudding's superior leadership skills as the reason for choosing Dudding over Plaintiff to remain the Division Engineer.

■ The burden then returns to Plaintiff to present evidence that Defendant's reasons for demoting Plaintiff were pretextual. To establish pretext, Plaintiff must show either that the employment decision was more likely motivated by Plaintiff's age, or that Defendant's proffered explanations for its decisions are unworthy of credence. *Munoz*, 221 F.3d at 1167. Plaintiff may accomplish this by offering evidence of " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.' " *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir.1996)) (further citations omitted) (applying ADA law).

A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false . . .; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances . . .; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir.2000) (internal citations omitted) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)) (applying § 1981 law). "Evidence of pretext may include, but is not limited to, the following: prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." *Simms v. Oklahoma ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1328 (10th Cir.1999) (citation omitted) (applying Title VII law). But the court will not deny summary judgment based on "mere conjecture that [the] employer's ex-

planation is a pretext for intentional discrimination. . . ." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

Plaintiff submits that the following evidence meets his pretext burden: (1) prior to the demotion, Plaintiff was superior to Dudding in managing capital and his budget; (2) Plaintiff had ten times the experience of Dudding as a Division Engineer; (3) Dudding had never conducted any disciplinary investigations; (4) Russell's observations and comments on the last performance evaluations of the two employees as to subjective areas were identical, although Dudding received higher numerical ratings, but Russell could not identify documents that would support Dudding's higher ratings; (5) in the objective areas of evaluation, Plaintiff outscored Dudding; (6) Defendant gave inconsistent reasons for the August 2000 territory switch; (7) Dudding had resigned and his position had been posted before he was offered the sole Division Engineer position; (8) Human Resources denies it was involved in the demotion decision, although policies required its participation; (9) the alleged "reorganization" affected only Plaintiff and Dudding; (10) Russell backdated the effective date of the demotion to February 16, 2001; and (11) there is no documentation to support any business drivers for the decision, and no evidence of any cost savings.

■ The first five pieces of evidence involve a comparison of Plaintiff's qualifications with Dudding's qualifications for the Division Engineer position. "When an employer contends that a plaintiff was not as qualified as the successful candidates, pretext can be inferred from evidence that a plaintiff was in fact more qualified than those chosen." *Martinez v. Wyoming Dep't of Family Servs.*, 218 F.3d 1133, 1139 (10th Cir.2000) (construing Title VII law); *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457–58 (10th Cir.1994) (citations omitted). Although Plaintiff alleges that he was the more qualified of the two, "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir.1996) (citing *Branson*, 853 F.2d at 772); *see also Conrad*, 237 F.Supp.2d at 1247; *Housley*, 177 F.Supp.2d at 1219.

■ The court is not convinced that Defendant's reasons are pretextual because Plaintiff had more experience and superior budgeting skills. Russell testified that Dudding received the position because of his superior leadership skills. Experience and budgeting skills were not a factor. Even if they were relevant, pretext "cannot be shown simply by identifying minor differences between [P]laintiff's qualification[s] and those of [Dudding]." *Timmermeyer v. Wichita Eagle and Beacon Pub. Co.*, 90 F.Supp.2d 1200, 1206 (D.Kan.2000) (citation omitted). Instead, the "disparity in qualifications must be 'overwhelming' to be evidence of pretext." *Id.* (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993) (noting difference in qualifications must "jump off the page and slap us in the face" to support finding of pretext)); *see also Paulsboe v. Farnam Companies*, No. 97–7003, 1997 WL 431414, at *3 (10th Cir. Aug.1, 1997). Here, both employees had similar qualifications. Dudding began his employment with the railroad and became an exempt employee a few years after Plaintiff, but both had substantial experience managing employees within the railroad. Plaintiff became the equivalent of a Division Engineer in 1994 and Dudding in 1999. Dudding had worked with Russell in various capacities since 1982, giving Russell adequate time to observe his leadership skills. The court concludes that any disparity in qualifications is not "over-

whelming." *See Timmermeyer,* 90 F.Supp.2d at 1206.

With numbers (4) through (11), Plaintiff apparently tries to show the use of subjective criteria, the presence of inconsistencies and contradictions, and the existence of disturbing procedural irregularities. Plaintiff's evidence is not such that a reasonable factfinder could infer that Defendant's reasons for demoting Plaintiff are unworthy of credence.

■ Plaintiff first focuses on Defendant's use of subjective criteria in the performance evaluations. "The use of subjective criteria does not . . . prove intentional . . . discrimination." *Hinojos v. Honeywell Int'l Inc.,* 56 Fed. Appx. 884, 886 (10th Cir.2003) (citing *Kelley v. Goodyear Tire & Rubber Co.,* 220 F.3d 1174, 1178 (10th Cir. 2000)) (applying Title VII law). While the use of subjective criteria lends itself to discrimination more readily than the use of objective criteria, *Danville v. Reg'l Lab Corp.,* 292 F.3d 1246, 1252 (10th Cir.2002) (citation omitted), subjective criteria may create an inference of discrimination only "if there is a showing of significant disparity in the representation of a particular group," *Lujan v. Walters,* 813 F.2d 1051, 1057 (10th Cir.1987). Plaintiff has offered no evidence suggesting misuse of subjective criteria, and the mere use of subjective criteria is inadequate to establish pretext.

The remainder of Plaintiff's evidence is similarly unpersuasive. The fact that Defendant gave inconsistent reasons for the August 2000 territory switch merely demonstrates the different understandings within the organization regarding a change that Plaintiff concedes was not discriminatory. Offering Dudding a position after he had tendered his resignation does not suggest discriminatory motives, and the fact that no cost savings have materialized from the consolidation of the District Engi-

neer positions does not make Defendant's purported anticipation of increased efficiency any less believable. The rest of Plaintiff's contentions simply are insufficient to suggest that Defendant had a discriminatory motive in demoting Plaintiff.

The court notes that Russell never made any age-based comments to or about Plaintiff, and was only a year-and-a-half younger than Plaintiff. While the fact that decision makers are in the same class as a plaintiff is not dispositive, "[a] plaintiff may have difficulty establishing discrimination where the alleged discriminatory decision-maker is in the same protected class. . . ." *Kendrick v. Penske Transp. Servs., Inc.,* No. 98–2289–KHV, 1999 WL 450886, at *7 (D.Kan. Apr.13, 1999), *aff'd,* 220 F.3d 1220 (10th Cir.2000) (citation omitted). Russell even offered to help Plaintiff find a Division Engineer position within another division, although the record only shows Division Engineer postings after the termination of Plaintiff's employment. The record is simply devoid of evidence that would suggest a discriminatory motive for Defendant's demotion of Plaintiff. For all of the above-stated reasons, the court grants summary judgment on this claim.

### B. ADEA Retaliation Claims

Plaintiff next claims that Defendant took adverse employment actions against him in retaliation for his opposition to Defendant's discriminatory acts. The *McDonnell Douglas* frame work is also used to evaluate retaliation claims. *See, e.g., Lundien v. United Airlines,* No. 00–1083, 2000 WL 1786579 (10th Cir. Dec.6, 2000) (applying Title VII law). "A plaintiff establishes a prima facie case of retaliation by showing: (1) he or she engaged in protected opposition to discrimination; (2) he or she was subject to adverse employment action; and (3) a causal connection exists between

the protected activity and the adverse action." *Kendrick*, 220 F.3d at 1234.

Plaintiff submits that because of his protected opposition, Defendant denied him access to the internal complaint procedure and failed to comply with the exempt employee discipline policy before terminating his employment. Defendant concedes that Plaintiff may have engaged in protected activity when he told Russell in February 2001 and Freshour in October 2001 that he planned to consult an attorney. Neither party addressed Plaintiff's statements that his demotion was unfair because of his age. The court will assume for purposes of this order that these statements also constituted protected activity.

### 1. Denial of Access to the Complaint Process

Plaintiff first contends that because of his protected opposition, Defendant denied him access to the internal complaint procedure. Defendant argues that any denial of access to the internal complaint process was not an adverse employment action because it did not have a sufficient impact on Plaintiff's employment status. *See, e.g., Kennedy v. Gen. Motors Corp.*, 226 F.Supp.2d 1257, 1268 (D.Kan.2002) (finding supervisor's attempt to halt investigation of the plaintiff's grievance not an adverse action). The court agrees.

To establish a prima facie case of either discrimination or retaliation under the ADEA, Plaintiff must show, among other things, that an "adverse employment action" was taken against him. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir.1998); *Trujillo v. N.M. Dep't of Corrections*, No. 98–2143, 1999 WL 194151, at *2 (10th Cir. Apr.8, 1999) (applying Title VII law). The Tenth Circuit takes a case-by-case approach in considering whether certain actions constitute adverse employment actions. *See Trujillo*, 1999 WL

194151, at *2. Generally, conduct qualifies as an adverse employment action if it "constitutes a significant change in [the plaintiff's] employment status." *Hertenstein v. Kimberly Home Health Care, Inc.*, 58 F.Supp.2d 1250, 1260 (D.Kan.1999) (applying Title VII law). While the Tenth Circuit approach is liberal, it is not so liberal as to include " 'mere inconvenience[s] or ... alteration[s] of job responsibilities' " as adverse actions. *Sanchez*, 164 F.3d at 532 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). " '[T]here are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions ... of [the ADEA].' " *Fortner v. Kansas*, 934 F.Supp. 1252, 1267 (D.Kan.1996) (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981)) (applying Title VII law).

Plaintiff claims that when he complained to Freshour about his demotion in February 2001, Freshour should have started the formal complaint process instead of merely "investigating" Plaintiff's allegations. Plaintiff terms Freshour's actions as "denial of access" to the formal complaint process. As an initial matter, the court questions whether Freshour's actions constituted "denial of access" at all, but nevertheless, the court considers whether any such denial served as an adverse employment action.

Plaintiff argues that Freshour's denial of access to the formal complaint process constituted an adverse employment action because "[c]onsidering the overwhelming inferences that Plaintiff's qualifications for the position were superior to Mr. Dudding's, it is conceivable that [P]laintiff could have won a [due process] hearing." Essentially, Plaintiff claims that he was harmed because, had Freshour initiated the formal complaint process, Plain-

tiff surely would have won the challenge and received the Division Engineer position over Dudding. Plaintiff's assertion is pure speculation and insufficient to survive summary judgment. *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir.2001); *see also Cuenca*, 265 F.Supp.2d 1191, 1208 (D.Kan.2003). Mere denial of access to a complaint procedure does not constitute an adverse employment action. *See Heno v. Sprint/United Mmgt. Co.*, 208 F.3d 847, 857 (10th Cir.2000) (noting that Plaintiff showed that "the Human Resources Department refused to further investigate her complaint once they found out she had filed an EEOC complaint," among other things, but that "[t]hese facts do not rise to the level of an adverse employment action"); *Dick v. Phone Directories Co.*, 265 F.Supp.2d 1274, 1289 (D.Utah 2003) (holding that failure to adequately investigate claims of harassment was not an adverse employment action under Title VII); *cf. Kortan v. California*, 5 F.Supp.2d 843, 852–53 (C.D.Cal.1998) (holding that denial of access to the plaintiff's internal affairs investigation files was not an adverse employment action under Title VII). The court grants summary judgment on this claim because Plaintiff has not mounted a prima facie case.

### 2. Unfair Handling of Termination

Plaintiff also claims that the protected activity of telling Freshour he was seeking counsel resulted in his being treated unfairly with respect to his termination. Plaintiff believes that the way his termination was handled was retaliatory because the company could have better answered his questions about how the position change would affect his retirement benefits. He also alleges that pursuant to the exempt employee discipline policy, he should have been warned that failing to make a decision could cost him his job.

Even assuming that Plaintiff can establish a prima facie case with respect to his "termination" claim, the claim is still insufficiently supported to survive summary judgment. Defendant has offered a legitimate, nondiscriminatory reason for its action: Plaintiff failed to decide which job he wanted, and Defendant had warned Plaintiff in a letter dated November 5, 2001 that termination was the only other option. The record contains no evidence suggesting that Defendant's actions were a pretext for unlawful retaliation.

Plaintiff had at least fifteen days to choose a position and remain employed. Every manager with whom Plaintiff spoke offered him positions and requested that Plaintiff stay with BNSF. Plaintiff testified in deposition that Dudding, Nuorala, and Freshour told him "that they would like to see [him] make a decision, and stick with the company." Plaintiff also testified that he thought Nourala "would have like [sic] to have seen me stay." Furthermore, Scott Kieffer, the director of maintenance in charge of the Nebraska Division, called Plaintiff and told him that he wished Plaintiff would take the Nebraska position and offered to move the position from Lincoln to Kansas City.

The record indicates that Defendant attempted to help Plaintiff resolve his benefits questions; Freshour referred Plaintiff to the "benefits hotline" when Plaintiff requested information about retirement benefits. The record also indicates that Plaintiff was given some indication that he might be terminated if he did not choose a position; Defendant warned Plaintiff in the November 5, 2001 letter offering him the alternative positions that "the only other options to replacement we can offer at this time would be to afford you the opportunity to exercise your senority [sic] or receive your resignation. If you choose to

resign or terminate your employment with BNSF you will be given two weeks severance."

Even in the absence of all the above-cited evidence weighing against pretext, the court still questions the merits of Plaintiff's claim. The court fails to see how Plaintiff's termination was inconsistent with the exempt employee discipline policy, as Plaintiff alleges. The policy is intended to apply to employees with "performance failure, managerial judgment error, or other performance considered to be below the requirements of the position." Plaintiff was terminated because his position was eliminated and Plaintiff failed to decide which job he wanted, not because of performance failure. Plaintiff admits that there was nothing retaliatory about the elimination of all the Assistant Division Engineer positions. Moreover, even if the policy applied to Plaintiff's situation, Defendant received the approval of Carl Ice before terminating Plaintiff, as required by the policy.

Finally, Plaintiff suggests that because the positions offered to Plaintiff were not filled immediately, Defendant could have given Plaintiff more time to make a decision. This rationale calls into question Defendant's business judgment, and the court will not second-guess Defendant' business judgment. *See Selenke v. Med. Imaging of Colorado,* 248 F.3d 1249, 1261 (10th Cir.2001) (citation omitted) (applying ADA standards).

In sum, the court concludes that Plaintiff has failed to present evidence suggesting that Defendant acted in retaliation to any protected activity by Plaintiff. A reasonable jury could not find that either Defendant's failure to instigate the formal complaint process or the way Defendant handled Plaintiff's termination was retaliatory.

While the court has not addressed all of Defendant's arguments with respect to Plaintiff's ADEA claims, further discussion is unnecessary, as the court has determined that summary judgment is warranted as to all ADEA claims.

### C. Breach of Contract Claim

Plaintiff's final claim is a state law claim for breach of an implied employment contract. The court questions whether it should exercise jurisdiction over the claim. Plaintiff alleged in his complaint and the pretrial order that this court has subject matter jurisdiction over his case under 28 U.S.C. §§ 1331 and 1367. Plaintiff did not allege that the court has diversity jurisdiction under 28 U.S.C. § 1332.

The court has determined that dismissal of Plaintiff's federal claims is appropriate. In the absence of another basis for original jurisdiction, the court intends to decline to exercise supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c)(3) (1994); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). But the court is unable to determine from the complaint and the pretrial order whether diversity jurisdiction exists in this case.

In his complaint, Plaintiff alleged that he is a resident and citizen of Kansas. He further alleged that Defendant is a Delaware Corporation, licensed to do business in Kansas. However, Plaintiff failed to allege Defendant's principal place of business as required by 28 U.S.C. § 1332. Because neither the complaint nor the pretrial order states Defendant's principal place of business, the court is unable to assert diversity jurisdiction over Plaintiff's state law claim. *See Buell v. Sears, Roebuck & Co.,* 321 F.2d 468, 470–71 (10th Cir.1963).

The court also notes that Plaintiff's complaint fails to allege an amount in controversy. "An open-ended prayer for recovery ... is not an allegation that diversity jurisdiction exists or that the amount in controversy exceeds [$75,000]." *Adams v. Reliance Standard Life Ins.*, 225 F.3d 1179, 1182 (10th Cir.2000) (citation omitted). However, the pretrial order alleges damages in excess of $400,000. The Tenth Circuit has held that because a pretrial order supersedes pleadings, allegations in the pretrial order may be considered as a proper allegation of jurisdiction. *Id.* at 1183. The court therefore determines that the requisite amount in controversy is satisfied.

"Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653 (1994). "The intention of Congress in enacting 28 U.S.C. § 1653 was to broadly permit amendment to avoid dismissal on technical grounds." *Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1289 (10th Cir.1971). In this case, the court concludes that the interests of justice favor allowing amendment of the pleadings to include a proper allegation of diversity jurisdiction if Plaintiff so desires. Plaintiff is granted ten (10) days from the date of this Memorandum and Order to amend the pleadings to properly allege diversity jurisdiction. If Plaintiff does so, the court will examine Plaintiff's state law breach of contract claim and determine whether summary judgment is appropriate. If Plaintiff fails to amend within ten days, the court will decline to exercise supplemental jurisdiction over Plaintiff's state law claim, and will dismiss it without prejudice.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant's motion for summary judgment (Doc. 45) is granted in part. The court defers ruling on whether Plaintiff's state law claim should be dismissed until after determining whether jurisdiction over the claim is proper.

Copies or notice of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**